IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:08-CV-140-D

| | | |
|---|---|---|
| LORENE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BRUNSWICK COUNTY BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

Lorene Williams ("Williams" or "plaintiff") filed suit against the Brunswick County Board of Education ("Board" or "defendant"). Williams alleges that the Board violated Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111–12117, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, when it transferred her from Director of Pre-K and Student Services to Dean of Students at Shallotte Middle School. The transfer resulted in no loss of pay, benefits, or seniority. The Board seeks summary judgment and contends that Williams is not disabled within the meaning of the ADA or Rehabilitation Act, that the transfer did not constitute adverse employment action, and that there is no evidence of unlawful discrimination (including unlawful retaliation). As explained below, the court grants summary judgment to the Board.

I.

Williams has worked for the Board since 1975. See Williams Dep. 32–33. From 1975 to 1985, Williams served in various classroom roles. See id. at 33. From 1985 to 1996, Williams served as Director of Exceptional Children's Program. Id. From 1996 to June 2005, Williams served as Director of Federal Programs. Id. In June 2005, Williams again became Director of Exceptional Children's Program. Id.; McGee Aff. ¶¶ 12–19. In December 2005, due to performance concerns, Superintendent Katie McGee transferred Williams to Director of Pre-K and Student Services. See McGee Aff. ¶¶ 21–37; see also Babson Aff. ¶ 5.

In early June 2007, Superintendent McGee decided to recommend Williams' transfer to a position as Dean of Students at Shallotte Middle School. McGee Aff. ¶¶ 46–54. Superintendent McGee believed that Williams would be able to work with the at-risk students at Shallotte Middle School in light of Williams' skills and ties to the Shallotte community. See id. ¶¶ 7, 52. Superintendent McGee decided to make the recommendation to the Board as part of a reorganization plan involving fifteen employees. See id. ¶¶ 46, 54, 56.

On June 4, 2007, Williams submitted a letter to her immediate supervisor, Dr. Zelphia Grissett, requesting a six-month medical leave of absence from June 8, 2007, through December 8, 2007. Williams Dep. 100; Id., Ex. 5. In her letter, Williams explained her plan to use her accumulated sick leave due to her "diabetic levels" and "accompanying gynecological problems." Id. Ex. 5.

On June 5, 2007, before the Board meeting, Superintendent McGee advised the employees subject to her transfer recommendations about the recommendations. See McGee Aff. ¶¶ 46, 56. As for Williams, Superintendent McGee met with Williams in person to tell her of the recommended transfer. Id. ¶ 57. Williams was upset and told Superintendent McGee that she wanted to remain as Director of Pre-K and Student Services. Id. ¶¶ 57, 64. When Superintendent McGee met with Williams, she knew that Williams had requested a six-month medical leave of absence, but did not know about the request when she decided to recommend the transfer. Id. ¶ 59.

On June 5, 2007, the Board approved Superintendent McGee's reorganization plan, including Williams' transfer to Dean of Students at Shallotte Middle School. See id. ¶ 46. The transfer did not impact Williams' salary, benefits, or seniority. See Williams Dep. 111–12; Baily Aff. ¶ 5. Williams was upset about the transfer and asked the Board to meet with her to permit her to contest the transfer. See Williams Dep. 51, 59–60; McGee Aff. ¶ 66. Although the Board was not required to meet with Williams, the Board granted her request for a meeting. See Babson Aff. ¶ 9; Miller Aff. ¶ 6.

On June 12, 2007, Williams visited her physician, Dr. James Wortman, and told him that she was taking a six-month medical leave of absence. Wortman Dep. 32–33. Williams told Dr. Wortman that her leave "means nothing" and that she was due the sick leave. See id. at 38–39. Dr. Wortman never advised Williams that she needed a six-month medical leave of absence. Id. at 40. In fact, no medical professional ever advised Williams that she needed a six-month medical leave of absence. See Williams Dep. 104–05.

In June 2007, Williams' gynecologist, Dr. Susan Wilson, told Williams that she might need surgery if the polyps in her uterus were cancerous. See id. at 104–05, 184, 187–88, 224–25. The polyps, however, were not cancerous, and Williams received outpatient treatment in late June 2007 to remove the polyps. See id. at 207–08, 225.

On July 2, 2007, Williams met with the Board to contest her transfer to Dean of Students at Shallotte Middle School. See Milligan Aff. ¶¶ 7–9; Babson Aff. ¶ 10; Miller Aff. ¶ 7; Hobbs Aff. ¶ 5. At the meeting, Williams asked the Board to permit her to remain as Director of Pre-K and Student Services until she retired and claimed that Superintendent McGee did not value her skills and abilities and personally disliked her. See Milligan Aff. ¶¶ 8–9; Hobbs Aff. ¶¶ 5–6; see also Babson Aff. ¶ 10; Miller Aff. ¶ 7.

On August 7, 2007, Superintendent McGee submitted a written response to the Board explaining her rationale for recommending Williams' transfer. See McGee Aff., Ex. 8. Again, Dr. McGee noted Williams' ability to work with at-risk students at Shallotte Middle School and her ties to the Shallotte community. See id. On August 27, 2007, the Board voted to uphold Williams' transfer. See Milligan Aff. ¶ 11. The Board members testified that Williams' health did not affect the decision to transfer Williams and they had no knowledge that Williams was diabetic when the decision was made. See id. ¶ 12; Babson Aff. ¶ 13; Miller Aff. ¶ 9; Hobbs Aff. ¶ 8.

Williams would have returned to work in August 2007 if the Board had permitted her to return as Director of Pre-K and Student Services. See Williams Dep. 211–12. Instead, Williams

3

remained on sick leave until January 2008. Id. at 210–11. During her sick leave, Williams visited with relatives, relaxed, and took a vacation to the Caribbean. See id. at 212. Williams returned to work in January 2008, and has served as the Dean of Students at Shallotte Middle School since that time. See id. at 33, 211; McGee Aff. ¶ 68.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted) (emphasis removed). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A.

Williams has no direct evidence of disability discrimination concerning her June 2007 transfer and proceeds under the McDonnell-Douglas burden-shifting framework. See Rhoads v. FDIC, 257 F.3d 373, 387 n.11, 391–92 (4th Cir. 2001) (applying McDonnell-Douglas framework to ADA claim); Hooven-Lewis v. Caldera, 249 F.3d 259, 267–71 (4th Cir. 2001) (applying McDonnell-Douglas framework to Rehabilitation Act claim). Under that framework, Williams initially must establish a prima facie case by demonstrating that: (1) she is within the ADA's protected class; (2) she suffered adverse employment action; (3) at the time of the adverse

4

employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. See Rhoads, 257 F.3d at 387 n.11; Ennis v. Nat'l Ass'n of Business & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995); cf. Hooven-Lewis, 249 F.3d at 266–67. If Williams establishes a prima facie case, the Board then must articulate a legitimate non-discriminatory reason for the adverse employment action. See, e.g., Raytheon Co. v. Hernandez, 540 U.S. 44, 49–50 (2003); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–07 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the Board meets this burden of production, Williams must prove by a preponderance of the evidence that the Board's stated reason for the adverse employment action was a mere pretext for unlawful discrimination. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). "[T]he plaintiff can prove pretext by showing that the [employer's] explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [disability discrimination]." Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004) (quotations omitted); see Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004).

The Board argues that Williams has failed to establish her prima facie case because (1) in June 2007 she did not have a disability as defined in the ADA or Rehabilitation Act; (2) the transfer did not constitute adverse employment action; and (3) the transfer did not arise under circumstances giving rise to a reasonable inference of unlawful discrimination. See Def.'s Mem. 7–20.[1]

Initially, the court must decide whether to apply the ADA Amendments Act of 2008 ("ADAAA") in this case. See ADAAA, Pub. L. No. 110-325, 122 Stat. 3553. On September 25, 2008, President George W. Bush signed the ADAAA, and the ADAAA made substantial changes

---

[1] The court interprets the Rehabilitation Act using the law applicable to the ADA. See, e.g., Hooven-Lewis, 249 F.3d at 268; Baird ex rel. Baird v. Rose, 192 F.3d 462, 468–69 (4th Cir. 1999); Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995).

5

to the ADA, including changes to the definition of disability. See id. § 4, 122 Stat. at 3555–57. The ADAAA did not, however, take effect until January 1, 2009. See id. § 8, 122 Stat. at 3559. Moreover, the ADAAA does not apply retroactively; therefore, the court applies the ADA (including the definition of disability) in effect in June 2007. See, e.g., Ragusa v. Malverne Union Free Sch. Dist., No. 08-5367-CV, 2010 WL 2490966, at *1 n.2 (2d Cir. June 21, 2010) (unpublished); Shin v. Univ. of Md. Med. Sys. Corp., No. 09-1126, 2010 WL 850176, at *5 n.14 (4th Cir. Mar. 11, 2010) (unpublished); Johnson v. Weld County, 594 F.3d 1202, 1217 n.7 (10th Cir. 2010); Kania v. Potter, 358 Fed. Appx. 338, 341 n.5 (3d Cir. 2009) (unpublished); Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009) (per curiam); Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34 n.3 (1st Cir. 2009); Fredricksen v. United Parcel Serv., Co., 581 F.3d 516, 521 n.1 (7th Cir. 2009); Lytes v. DC Water & Sewer Auth., 572 F.3d 936, 942 (D.C. Cir. 2009); Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 565 (6th Cir. 2009); EEOC v. Agro Distribution, LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009). The same definition of disability also applies to plaintiff's Rehabilitation Act claims. See 29 U.S.C. § 705(20)(B); Hooven-Lewis, 249 F.3d at 268–69.

In order to fall within the ADA's or Rehabilitation Act's protected class, a person must be a "qualified individual with a disability." See 42 U.S.C. § 12112(a); 29 U.S.C. §§ 705(20)(B), 794(a); Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 (4th Cir. 2004); Rhoads, 257 F.3d at 387. An individual is disabled under the ADA or Rehabilitation Act if she has "a physical or mental impairment that substantially limits [her in] one or more . . . major life activities." 42 U.S.C. § 12102(2)(A); see 29 U.S.C. § 705(20)(B). Under the ADA, a person can claim an actual impairment or claim that her employer "regarded" her as having such an impairment. See 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B).

In this case, Williams contends that she was actually disabled in June 2007 and that the Board regarded her as disabled in June 2007. In support, Williams cites her diabetes and the effect that her diabetes had on her health. See Pl.'s Resp. 1–2, 6.

6

Simply because a person has a physical impairment (such as diabetes) does not mean that the person falls within the ADA's protected class. See, e.g., Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002), abrogated by statute, ADAAA, Pub. L. No. 110-325, 122 Stat. 3553; Hooven-Lewis, 249 F.3d at 269–71. Rather, under the ADA and the Rehabilitation Act, a person must show that her physical impairment "substantially limits one or more of [her] major life activities." 42 U.S.C. § 12102(2)(A); see 29 U.S.C. § 705(9)(B), (20)(B). "Substantially limits" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Examples of "major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. § 1630.2(i); see Williams, 534 U.S. at 198; Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 255 (4th Cir. 2006); Rhoads, 257 F.3d at 387; Hooven-Lewis, 249 F.3d at 269.

Williams asserts that her diabetes substantially limited her in the major life activity of working. Cf. Pl.'s Resp. 1–2. However, Williams' doctors never suggested that she needed a six-month medical leave of absence due to her diabetes or any other physical impairment. See Wortman Dep. 33, 40; Williams Dep. 104–05. Moreover, although Williams did have non-cancerous polyps removed in late June 2007, such a temporary impairment does not qualify as a disability under the ADA or Rehabilitation Act. See, e.g., Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467–72 (4th Cir. 2002); Halperin v. Abacus Tech. Corp., 128 F.3d 191, 199 (4th Cir. 1997), abrogated on other grounds by Baird, 192 F.3d 462. Similarly, to the extent that Williams sometimes felt symptoms due to her diabetes (such as dizziness or ankle swelling), such temporary symptoms do not mean that she was disabled under the ADA. See, e.g., Pollard, 281 F.3d 467–72; Halperin, 128 F.3d at 199. Furthermore, Williams' testimony that she felt sick in June 2007 (Williams Dep. 187) does not mean that she had a "disability" under the ADA. Simply put, Williams' self-diagnosis of

7

feeling sick in June 2007 due to her diabetes does not mean that she had a physical impairment that substantially limited her ability to perform the major life activity of working. See, e.g., Hooven-Lewis, 249 F.3d at 269–71; accord Williams, 534 U.S. at 198–99; Sutton v. United Air Lines, Inc., 527 U.S. 471, 492–93 (1999), superseded by statute, ADAAA, Pub. L. No. 110-325, 122 Stat. 3553.

As for Williams' contention that the Board "regarded" her as disabled in June 2007, Williams must show that "(1) her employer mistakenly believed that she has a physical impairment that substantially limits one or more major life activities, or (2) her employer mistakenly believed that an actual, nonlimiting impairment substantially limits one or more major life activities." Rhoads, 257 F.3d at 390 (quotations and alterations omitted); see Sutton, 527 U.S. at 489; 42 U.S.C. § 12102(2)(C). However, Superintendent McGee decided to recommend the transfer before she knew about Williams' requested sick leave, and Williams' health had nothing to do with the transfer recommendation. See McGee Aff. ¶¶ 46, 59–61. Moreover, the Board did not know about Williams' diabetes or sick-leave request when it approved the transfer. See Babson Aff. ¶¶ 7–13; Hobbs Aff. ¶¶ 4–8; Miller Aff. ¶¶ 5–9; Milligan Aff. ¶¶ 6–12; cf. Hooven-Lewis, 249 F.3d at 278 (plaintiff cannot prove causation without showing that the decisionmaker actually had knowledge of the protected activity or status at the time of the alleged adverse employment action); Gibson v. Old Town Trolley Tours of Wash., D.C., Inc., 160 F.3d 177, 181–82 (4th Cir. 1998) (same); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (same). Furthermore, the Board members who voted to approve her transfer denied transferring Williams because of her health or her sick-leave request. See Babson Aff. ¶ 13; Hobbs Aff. ¶ 8; Miller Aff. ¶ 9; Milligan Aff. ¶ 12. Finally, the Board's decision to transfer Williams to the position of Dean of Students at Shallotte Middle School belies any suggestion that the Board regarded Williams as being disabled. See, e.g., Rhoads, 257 F.3d at 390–91; Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 703–04 (4th Cir. 2001); Hooven-Lewis, 249 F.3d at 270–71. Because Williams has failed to demonstrate that she is within the ADA's or Rehabilitation Act's protected class, she has failed

8

to establish a prima facie case, and the Board is entitled to summary judgment.

Alternatively, Williams' prima facie case fails because she has failed to demonstrate that she suffered an adverse employment action in being transferred from Director of Pre-K and Student Services to Dean of Students at Shallotte Middle School. As mentioned, the transfer had no impact on Williams' salary, benefits, or seniority. See Williams Dep. 111–12; Bailey Aff. ¶ 5.

Initially, the parties dispute what constitutes an adverse employment action in the context of Williams' ADA and Rehabilitation Act substantive claim. The dispute concerns whether to apply the "adverse employment action" standard that the Supreme Court announced in Burlington Northern & Santa Fe Railway v. White, 548 U.S. 53 (2006). In Burlington Northern, the Supreme Court analyzed Title VII's antiretaliation provision[2] and contrasted it with Title VII's substantive antidiscrimination provision.[3] See id. at 61–67. The Court noted that Title VII's substantive

---

[2] 42 U.S.C. § 2000e-3(a) states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

[3] 42 U.S.C. § 2000e-2(a) states:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment

9

antidiscrimination provision is limited to actions that affect employment or alter the conditions of the workplace, such as discharge or a material change in compensation, terms, conditions, or privilege of employment. Id. at 61–62. In contrast, the Court noted that "the antiretaliation provision [in Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Id. at 64. Rather, a plaintiff may satisfy the requirement of adverse employment action under Title VII's antiretaliation provision by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quotations omitted).

Every circuit court to address this issue (including the Fourth Circuit) has held that Burlington Northern's adverse-employment action standard does not apply to Title VII's substantive antidiscrimination provision. See, e.g., Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 n.6 (2d Cir. 2010); Morales-Vallellanes v. Potter, 605 F.3d 27, 35–36 (1st Cir. 2010); Gaujacq v. EDF, Inc., 601 F.3d 565, 577 (D.C. Cir. 2010); Rodriguez v. Pierce County, 267 Fed. Appx. 556, 557 (9th Cir. 2008) (unpublished); Osahar v. Postmaster Gen. of U.S. Postal Serv., 263 Fed. Appx. 753, 761 n.8 (11th Cir. 2008) (per curiam) (unpublished); Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 593–94 (6th Cir. 2007); McCoy v. City of Shreveport, 492 F.3d 551, 559–60 (5th Cir. 2007) (per curiam); Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007); Higgins v. Gonzales, 481 F.3d 578, 589–91 (8th Cir. 2007); Brockman v. Snow, 217 Fed. Appx. 201, 205–06 & n.3 (4th Cir. 2007) (unpublished); Szymanski v. County of Cook, 468 F.3d 1027, 1029 (7th Cir. 2006); Moore v. City of Philadelphia, 461 F.3d 331, 341–42 (3d Cir. 2006). As for Title VII's substantive antidiscrimination provision, the Fourth Circuit continues to require that a plaintiff show an

---

opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

"'ultimate employment' action that affects 'hiring, granting leave, discharging, promoting, and compensating.'" Snow, 217 Fed. Appx. at 205 (quoting Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc)). In light of the difference in language between the ADA's and the Rehabilitation Act's substantive antidiscrimination provisions[4] and the antiretaliation provisions,[5] this court concludes that Williams must show an "ultimate employment" action on her substantive ADA and Rehabilitation Act claims. See, e.g., James v. Goodyear Tire & Rubber Co., 354 Fed. Appx. 246, 248–49 (6th Cir. 2009) (unpublished); Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868–69 (8th Cir. 2008); Snow, 217 Fed. Appx. at 205–06; cf. Hennagir v. Utah Dep't of Corr., 587 F.3d 1255, 1266 (10th Cir. 2009) (recognizing adoption of Burlington Northern's Title VII retaliation standard in the ADA retaliation context).

In light of the undisputed evidence that the transfer to Dean of Students did not affect Williams' pay, benefits, or seniority, the transfer does not constitute adverse employment action. See, e.g., James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004); Boone v. Goldin, 178 F.3d 253, 256–57 (4th Cir. 1999). Williams' "opinion" that being transferred from the central office to a school constitutes a demotion is not enough to transform the transfer into adverse employment action. See, e.g., James, 368 F.3d at 375; Boone, 178 F.3d at 256–57. Indeed, the record shows that such transfers are not uncommon. See McGee Aff. ¶ 53. Thus, the Board is entitled to summary judgment.

Finally, even assuming that Williams falls within the protected class and assuming that the transfer is an adverse employment action, the transfer did not occur under circumstances giving rise to a reasonable inference of unlawful discrimination. Williams testified that she was diagnosed with diabetes in 1995. See Williams Dep. 77–78. Superintendent McGee supervised Williams for a good

---

[4]See 42 U.S.C. § 12112; 29 U.S.C. § 794(a), (d).

[5]See 42 U.S.C. § 12203; 29 U.S.C. § 794(a), (d).

11

portion of time between 1995 and 2007, knew about her diabetes, and gave her good performance reviews. See id. at 76–77, 79–80; McGee Aff. ¶¶ 3, 5–6. Although Williams' working relationship with Superintendent McGee deteriorated over time, not even Williams believes that the relationship deteriorated due to her diabetes. See id. 151–52; cf. McGee Aff. ¶¶ 12–45. In short, no reasonable factfinder could infer that Superintendent McGee decided to recommend Williams' transfer due to her diabetes and then convinced the Board to do so. Cf. Taylor v. Va. Union Univ., 193 F.3d 219, 231 (4th Cir. 1999) (en banc) (discussing same-actor inference), abrogated in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996) (same); Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 214–15 (4th Cir. 1994) (same); Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) (same). Because Williams has failed to establish a prima facie case, the Board is entitled to summary judgment on her claim that the 2007 transfer violated the ADA or Rehabilitation Act.

B.

Williams also contends that the Board transferred her to Dean of Students at Shallotte Middle School in violation of the antiretaliation provisions in the ADA and Rehabilitation Act. See Compl. ¶¶ 11–12; 42 U.S.C. §12203(a); 29 U.S.C. § 794(a), (d). Once again, Williams lacks any direct evidence of retaliation, and proceeds under the McDonnell-Douglas framework. In order to establish a prima facie case under that framework, Williams must show that (1) she engaged in protected activity; (2) her employer took an action against her which a reasonable employee would find materially adverse; and (3) the employer took the materially adverse employment action because of the protected activity. See, e.g., Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1131 (10th Cir. 2010) (applying Burlington Northern to Rehabilitation Act retaliation claim and noting ADA standard is the same); Shannon v. Postmaster Gen. of U.S. Postal Serv., 335 Fed. Appx. 21, 26 (11th Cir. 2009) (per curiam) (unpublished) (same); Burks v. Wis. Dep't of Transp., 464 F.3d 744, 756 n.12, 758 & n.16 (7th Cir. 2006) (same); see also Warren v. Goord, No. 06-3349-PR, 2008

WL 5077004, at *2 (2d Cir. Nov. 26, 2008) (unpublished) (applying Burlington Northern to ADA retaliation claim); Grubic v. City of Waco, 262 Fed. Appx. 665, 666–67 (5th Cir. 2008) (per curiam) (unpublished) (same); Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir. 2006) (same); cf. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002) (pre-Burlington Northern ADA retaliation case).

Williams contends that requesting a six-month medical leave of absence in June 2007 constitutes protected activity, and the court assumes (without deciding) that the request does constitute protected activity. See, e.g., Haulbrook, 252 F.3d at 706. Nonetheless, her retaliation claim fails. First, the requested accommodation was a six-month medical leave of absence, and the record demonstrates that Williams, in fact, received a medical leave of absence from June 2007 to January 2008 even though she was not disabled under the ADA. Thus, she received the requested accommodation. Alternatively, even if the court construes the requested accommodation to be Williams' July 2007 request to the Board to remain as Director of Pre-K and Student Services until she retired, her retaliation claim still fails. Both the ADA and Rehabilitation Acts require that a requested accommodation be reasonable on its face. See, e.g., Hennagir, 587 F.3d at 1265 n.3. The Board, however, does not grant career tenure in a given position at the central office to anyone. See, e.g., Milligan Aff. ¶ 9; Hobbs. Aff. ¶ 6. Moreover, the Board was not required to violate this neutral policy by permitting Williams to remain as Director of Pre-K and Student Services until retirement. See, e.g., US Airways, Inc. v. Barnett, 535 U.S. 391, 396–406 (2002); EEOC v. Sara Lee Corp., 237 F.3d 349, 353–55 (4th Cir. 2001). Thus, when the Board rejected Williams' facially unreasonable request to remain as Director of Pre-K and Student Services until retirement, the Board did not unlawfully retaliate against Williams. Cf. Barnett, 535 U.S. at 396–406; Sara Lee Corp., 237 F.3d at 353–55; see also Mays v. Principi, 301 F.3d 866, 872 (7th Cir. 2002) (an employer is not required to provide the particular accommodation that an employee requests); Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1017 (7th Cir. 2000) (same).

13

Second, and in any event, a "reasonable accommodation" under the ADA is a modification or adjustment that enables a person with a "disability" to perform the essential functions of the job. See 29 C.F.R. § 1630.2(o)(1)(ii). The phrase "reasonable accommodation" does not mean that an employee gets whatever position she desires. See, e.g., Barnett, 535 U.S. at 396–406; Sara Lee Corp., 237 F.3d at 353–55. Here, the record demonstrates that Williams could perform both as Director of Pre-K and Student Services and as Dean of Students at Shallotte Middle School. She simply preferred the Director position. Such personal preference is not a "reasonable accommodation" under the ADA or Rehabilitation Act. See 29 C.F.R. § 1630.2(o)(ii), (iii). Finally, and in any event, even under the more lenient adverse-employment action standard articulated in Burlington Northern, the lateral transfer does not constitute adverse employment action. See, e.g., Scurlock-Ferguson v. City of Durham, No. 09-1719, 2010 WL 2255838, at *1 (4th Cir. June 7, 2010) (per curiam) (unpublished); Csicsmann v. Sallada, 211 Fed. Appx. 163, 168 (4th Cir. 2006) (per curiam) (unpublished). Furthermore, as already discussed, Williams cannot establish causation. Accordingly, the Board is entitled to summary judgment on plaintiff's retaliation claim under the ADA and Rehabilitation Act.

III.

As explained above, the court GRANTS the Board's motion for summary judgment [D.E. 32]. The Clerk of Court is DIRECTED to close the case.

SO ORDERED. This 2 day of July 2010.

JAMES C. DEVER III
United States District Judge